·John LAWSON, Appellant

v.

Barbara LAWSON, Appellee.

No. 2004–CA–001077–MR.

Court of Appeals of Kentucky.

June 22, 2007.

Stephen W. Cessna, London, KY, for appellant.

Jane R. Butcher, Williamsburg, KY, for appellee.

Before ABRAMSON and TAYLOR, Judges; KNOPF,[1] Senior Judge.

## OPINION

ABRAMSON, Judge.

John Lawson appeals from the March 11, 2004 decree of the Whitley Circuit Court and several post-decree orders dissolving John's marriage to Barbara, dividing their property and debts, and awarding Barbara maintenance and child support. John contends that trial court abused its discretion when dividing the debt from the marital residence and any future award he may receive from his lawsuit against his former employer. He also argues that the trial court erred both by awarding maintenance to Barbara and by failing to reduce his child support obligation after he became unemployed. We find no error in the division of current property or debts, or relative to the payment of child support. However, we are compelled to reverse the award to Barbara of fifty percent of any judgment received by John in his wrongful termination lawsuit against his employer because any such award is nothing more

that mere speculation and it is impossible to know whether the characterization of such an award, if it occurs, would allow it to be deemed marital property. Further, because there is no evidence that the trial court considered John's ability to pay when it awarded maintenance to Barbara, we reverse the maintenance order and remand for additional proceedings.

On July 30, 2002, Barbara filed a petition to dissolve her marriage of sixteen years to John. During the marriage, Barbara was employed as a guidance counselor for the Whitley County Board of Education while John was employed as an environmental engineer. Following a hearing held on December 3, 2002, the trial court awarded the parties temporary joint custody of their two minor children. Further, after finding that John's gross monthly income was $11,394.00 and Barbara's was $3,461.67, the trial court held that Barbara was entitled to maintenance. Until the amount of the maintenance could be determined at a later time, John was ordered to pay the monthly mortgage payments on the parties' marital residence.

After numerous continuances allegedly due to John's failing to appear, a final hearing was scheduled for March 5, 2004. On that date, again John did not appear. However, because John had been made aware of the date by his counsel when it was scheduled, the trial court refused to continue the trial and Barbara was allowed to testify. On March 11, 2004, the trial court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution. Subsequently, on March 19, 2004, newly hired counsel for John[2] moved for a new trial or alternatively to vacate the findings.

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5) of the Kentucky Constitution and KRS 21.580.

2. At least two attorneys representing John in this matter had previously withdrawn from the case with the trial court's permission.

Following a hearing, the trial court overruled John's motion and found him in contempt for failing to pay child support. In its July 16, 2004 Order, the trial court found that John was not voluntarily unemployed. Accordingly, the court reduced John's child support obligation and also held the prior maintenance award in abeyance "pending the appeal in this action." This appeal followed.

John first contends that the trial court erred when it held that he was responsible for the outstanding indebtedness on the marital residence. As noted above, primarily because of the disparity in incomes between John and Barbara and in lieu of maintenance, the trial court initially ruled that John was responsible for making the mortgage payments on the marital residence during the pendency of the divorce action. However, between the date of the trial court's January 7, 2003 order and the final hearing held on March 5, 2004, John ceased making the payments and the mortgagee foreclosed on the home. Following a sale of the property, there remained a deficiency balance of approximately $100,000.00. John had, in fact, ceased making the payments because, as Barbara testified at trial, he had became unemployed after he was fired for failing a mandatory drug test administered by his employer. He now contends that he is unable to find new employment and that he is waiting on a resolution of a wrongful termination suit he filed against his former employer. In its findings, however, the trial court ruled that John had in fact had "sufficient income to maintain the property until the court held a final hearing on the merits."[3] Because of this, John was made fully responsible for the remaining deficiency balance.

Our review of the trial court's findings is governed by Kentucky Rule of Civil Procedure (CR) 52.01 which provides, in pertinent part, that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See also Largent v. Largent,* 643 S.W.2d 261 (Ky. 1982); *Taylor v. Taylor,* 591 S.W.2d 369 (Ky.1979); *Alvey v. Union Inv., Inc.,* 697 S.W.2d 145 (Ky.App.1985). We are therefore foreclosed from vacating a trial court's findings in a divorce proceeding unless they are found to be "clearly contrary to the weight of the evidence." *Clark v. Clark,* 782 S.W.2d 56, 58 (Ky.App.1990).

In dividing marital property, including debts, appurtenant to a divorce, the trial court is guided by Kentucky Revised Statute (KRS) 403.190(1), which requires that division be accomplished in "just proportions." This does not mean, however, that property must be divided equally. *Russell v. Russell,* 878 S.W.2d 24 (Ky.App.1994); *Wood v. Wood,* 720 S.W.2d 934 (Ky.App.1986). It means only that the division should be accomplished without regard to marital misconduct and in "just proportions" considering all relevant factors. *Brosick v. Brosick,* 974 S.W.2d 498 (Ky.App.1998). "Misconduct" relative to the dissipation of assets, however, is not marital in nature and may be considered. *Id.*

In the present matter, it is undisputed that John was obligated to make the mortgage payments on the marital residence as they became due. It is also undisputed that after John became unemployed through his own alleged misconduct,[4] he ceased making these payments,

---

3. John was ordered to pay the mortgage payment in a January 7, 2003 order. According

to the trial court's July 16, 2004 order, John did not lose his job until October 2003.

4. Because John failed to appear for the hear-

ostensibly to use that money to provide for himself. As a result, the mortgagee foreclosed on the house in which Barbara and the couple's two children were living, forcing them to seek a new home. Conversely, John, having failed to appear at the hearing, offered neither testimony nor any other evidence to explain his loss of employment, to demonstrate what efforts, if any, he had undertaken to acquire new employment, or whether he was able to prevent the loss of the residence prior to the final hearing. Moreover, because John made no effort whatsoever to inform the trial court regarding the loss of his job, were it not for Barbara's testimony the reason for John's failure to pay the mortgage would have remained unknown to the court. Under these circumstances, taken in conjunction with the fact that John's employment history demonstrates that his earning potential is significantly greater than Barbara's, the trial court did not act erroneously in assigning the total remaining debt on the marital residence to him.

■■■■ John also contends that while the trial court assigned to him the entire remaining debt on the marital residence, it also awarded Barbara fifty percent of any recovery he is awarded in his wrongful termination lawsuit against his former employer. According to John, this unfairly accords Barbara a windfall. While this may or may not prove to be correct—John has yet to offer *any evidence* of his alleged lawsuit—until such time as John actually receives a monetary award, his right to any such proceeds is purely speculative. Because of this, any attempt by the trial court to divide them as a part of the marital estate is premature given the fact that there is no proof in the record as to the exact nature of the claims asserted by

John and whether any damages awarded for those claims may properly be deemed marital property. Though Kentucky law appears silent with respect to the divisibility of speculative wrongful termination awards, at least some support for our conclusion may be found in the treatment of other forms of future income. For instance, with respect to personal injury claims, the law is clear that whether a damage award obtained in a personal injury suit is divisible is dependent upon the date the supposed injury occurred and the characterization of the damages awarded (e.g., damages awarded for pain and suffering are *not* marital). *See, e.g., Weakley v. Weakley*, 731 S.W.2d 243 (Ky.1987). Similarly, whether a workers' compensation award is divisible as marital property is dependent upon the timing of the compensatory payments. *See, e.g., Johnson v. Johnson*, 638 S.W.2d 703 (Ky.1982). Thus, because John has not yet received any damage award pursuant to his wrongful termination claim, and further because of the speculative nature of any such award and its characterization, the trial court lacked a sufficient basis for deeming as marital property any and all future proceeds John may realize. Thus, we are compelled to reverse that portion of the March 11, 2004 awarding Barbara one half of any judgment awarded to John. Of course, if, at some point in the future John is successful and receives a monetary judgment against his former employer, the trial court is certainly free to revisit this matter for an appropriate determination at that time.

John further argues that the trial court's award of maintenance to Barbara does not comport with KRS 403.200(1). According to that statute

ing, Barbara's testimony that John failed a mandatory drug test administered by his em-

ployer stands unrebutted.

the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment. . . .

According to John, the trial court erred when it found that Barbara was entitled to maintenance because she was awarded the majority of the marital assets and was able to provide for her reasonable needs through her employment with the Whitley County Board of Education. We disagree.

■ KRS 403.200(2) sets forth some of the factors that a trial court should consider when awarding maintenance. Among these is the "standard of living established during the marriage." KRS 403.200(2)(c). As the trial court noted in its Findings of Fact, during the parties' sixteen year marriage they established a "moderately high" standard of living. Such a standard was achieved mainly through John's annual income which, until he lost his job, was approximately three times that of Barbara. The trial court further noted that Barbara was forced to find new living accommodations upon the loss of the marital residence and, while addressing her own serious medical concerns, had to obtain medical insurance for the couple's children after John failed to acquire coverage. Under these circumstances, we do not believe that the trial court abused its discretion in awarding Barbara limited maintenance of $2,500.00 per month for five years in the March 11, 2004 decree. However, this conclusion does not dispose of this issue.

■ In its July 16, 2004 Order, the trial court reversed its earlier determination that John was voluntarily unemployed and held that the payment of maintenance would be held in abeyance pending this appeal. We are unable to discern the intended effect of this "abeyance" ruling. Perhaps the trial court believes that John's maintenance obligation is enforceable despite his lack of employment and has merely stayed the obligation pending our decision on this point. Regardless of the trial court's intent, it is not clear from either the July 16, 2004 order or the prior March 11, 2004 decree that the trial court ever considered John's ability to pay maintenance, especially in light of the court's finding that John's unemployment was involuntary. According to KRS 403.200(2)(f), one of the factors that a trial court must consider when deciding whether to award maintenance is "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Because we cannot determine whether the trial court addressed this, we must reverse the March 11, 2004 decree to the extent that it orders John to pay maintenance of $2,500.00 to Barbara and remand for a new determination in accordance with all of the relevant factors as required by KRS 403.200(2).

Finally, in its July March 11, 2004 decree, the trial court awarded custody of the parties' two children to Barbara due to the fact that John had little or no contact with his children, engaged in inappropriate conduct when he did, and had accumulated an arrearage in his child support obligation in the amount of $11,200.00. John argues on appeal that the trial court's award of child support in the decree in the amount of $1,400.00 per month violates the child support guidelines embodied in KRS 403.211 and KRS 403.212. However, in its July 16, 2004 order entered subsequent to the decree the trial court reexamined John's child support obligation in light of the loss of his job. Finding that his unemployment was involuntary, the trial court imputed minimal income to him and there-

by reduced his support obligation to $230.34 per month. Because John has not challenged this recomputed obligation and we find no error in it, we affirm the modified child support order.

In conclusion, the trial court's decision to award the remaining debt on the marital residence to John was not erroneous and was supported by the evidence in the record. We likewise find no error in the trial court's July 16, 2004 child support order. However, because the record is silent as to whether the trial court considered John's ability to pay when awarding maintenance to Barbara, we reverse the maintenance order contained in the decree and remand for further proceedings. Accordingly, we reverse the Whitley Circuit Court's March 11, 2004 Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage only to the extent that it orders John to pay maintenance in the amount of $2,500.00 per month to Barbara for five years and that it awards Barbara fifty percent of any judgment received by John as a result of his wrongful termination lawsuit. The March 11, 2004 decree and the July 16, 2004 order are affirmed in all other respects.

ALL CONCUR.