Michael E. STIPP, Appellant,

v.

Anna M. ST. CHARLES, Appellee.

No. 2008–CA–000400–MR.

Court of Appeals of Kentucky.

July 2, 2009.

James Dean Liebman, Frankfort, KY, for appellant.

Peter L. Ostermiller, Robert G. Stallings, Louisville, KY, for appellee.

Before ACREE and NICKELL, Judges; KNOPF,[1] Senior Judge.

## OPINION

ACREE, Judge.

This is an appeal from an order of the Jefferson Family Court dispensing with several matters relative to the dissolution of the marriage of Anna St. Charles (formerly Stipp) and Michael Stipp. Michael contends that the family court erred by finding that he waived objection to venue and further argues that the family court committed several errors in dividing the parties' marital assets and awarding maintenance benefits. We affirm.

## FACTS AND PROCEDURE

The parties were married on June 25, 1987, and separated in April 2007. Anna and Michael have one minor child, now in his late teens. When the parties married, Anna was working for the Lexington Herald–Leader newspaper. She had a bachelor's degree from the University of Kentucky. Michael had dropped out of college to work at his father's surveying business. The most he earned in one year was $30,000 to $35,000.

The parties remained in Lexington for approximately ten years, then due to promotions and better job opportunities for Anna, the couple and their child moved to Pennsylvania, South Carolina, Louisiana, and finally settled in Oldham County in October 2005. While living in Pennsylvania, the parties jointly decided that Michael would stay at home and take care of

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

the parties' child. However, Anna maintains she encouraged Michael to work while they lived in South Carolina and Louisiana.

Anna's current annual salary is $235,000 and is supplemented with bonuses, stock options and stock units. She received a $25,000 bonus in early 2007. Her monthly net income after taxes and various insurance premiums is $13,721.

In 2007, Anna sent the parties' child to a behavioral treatment program in Idaho after he attempted suicide. Anna did not consult Michael concerning this decision. Tuition for the program was $8,500 per month. Anna had to borrow $62,640 against her 401K retirement plan to pay the tuition while in Idaho. Michael did not contribute to these expenses.

Anna filed for divorce on April 9, 2007, in Jefferson Family Court. Initially, the parties continued to live together in the marital residence located in Prospect, Kentucky, in Oldham County near the Jefferson County line. On April 23, 2007, Anna filed a domestic violence petition against Michael in Oldham Family Court and an emergency protection order was entered.

On April 30, 2007, Michael filed his response to the divorce petition. He requested that the parties be awarded joint custody of their child, that marital property be divided, and that he receive maintenance from Anna.

Michael also made note of the fact that "neither party resided in Jefferson County" and that "proper venue for this action lies in Oldham County." He did not, however, object to venue. Instead, Michael stated that he "reserves the right to ask this court to transfer this case to the Oldham Circuit Court."

Michael filed his mandatory case disclosure on May 21, 2007. In that document, he provided legal and factual information concerning his financial circumstances and concerning his identification of the issues to be decided by the family court. In particular, Michael indicated that the legal issues to be resolved included maintenance, property division, valuation of assets and debt allocation. Michael also noted that he was currently living in Lexington. He still did not object to venue.

A case management conference was scheduled by the family court for June 25, 2007. Mediation was also scheduled for early July.

Michael and Anna continued to move forward with the divorce in Jefferson Family Court as evidenced by respective filings on May 24 and 31, 2007. On June 8, 2007, the parties executed an agreed order which was tendered to the family court and entered on June 12, 2007. The order included an agreement to request the dismissal of the domestic violence order of protection in Oldham County. On June 20, 2007, the domestic violence order was dismissed.

On June 25, 2007, the Jefferson Family Court entered an order rescheduling the parties' case management conference to July 20, 2007. Also on June 25, Michael filed a motion requesting a transfer of the case from Jefferson County to Oldham County on grounds of improper venue. The motion noted that Anna still lived in Oldham County and Michael lived in Fayette County.

On July 20, 2007, the family court proceeded with the status conference. Addressing Michael's motion in which he actually objected to venue for the first time, the court found it to be untimely and denied it on that basis.

The family court conducted a final hearing on October 4, 2007, before entering an order containing findings of fact, conclusions of law and a judgment on December

4, 2007. The court awarded Anna 57% of the marital assets and 43% to Michael. It awarded Michael maintenance of $2,000 per month for a period of six years. Further, Anna was directed to continue providing health insurance coverage for Michael for a period of three years.

On December 14, 2007, Anna filed a motion to alter, amend or vacate the December 4, 2007 judgment challenging certain portions of the order. On February 1, 2008, the family court entered an order upholding its previous judgment except issues concerning the disposition of the 2006 income tax refunds and the time period Anna was to provide health insurance coverage for Michael. The 2006 income tax refund was to be allocated for the parties' joint childcare obligation; however, it had been erroneously included in the total value of the marital assets to be distributed. The trial court remedied this mistake by reducing the amount Anna was ordered to transfer from her 401K via a qualified domestic relations order. The family court further agreed to reduce the length of time that Anna was required to provide insurance coverage for Michael to eighteen months, the period of allowable coverage under Anna's health insurance plan.

Thereafter, Michael filed his appeal from the July 24, 2007, December 4, 2007, and February 1, 2008 orders.

## STANDARD OF REVIEW

■ We review the findings of fact in a dissolution action only to determine if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01; *Sexton v. Sexton*, 125 S.W.3d 258 (Ky.2004); *Ghali v. Ghali*, 596 S.W.2d 31 (Ky.App.1980). CR 52.01 states, in part,

Findings of fact shall not be set aside unless clearly erroneous, and due respect shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The trial court's conclusions of law are reviewed *de novo. Gosney v. Glenn,* 163 S.W.3d 894, 898–99 (Ky.App.2005).

■ "[T]he matter of granting change of venue lies within the sound judicial discretion of the trial court. The exercise of that discretion will not be disturbed on appeal unless the facts clearly indicate an abuse of it." *Miller v. Watts*, 436 S.W.2d 515, 518 (Ky.1969).

■ Decisions concerning the division of marital property are also within the sound discretion of the trial court, and will not be disturbed except for an abuse of that discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky.2001).

## VENUE

■ Citing KRS 452.470,[2] Michael argues that Oldham County is the proper venue for the dissolution proceeding and that the family court erred by denying his motion to transfer the case. We disagree.

Our analysis presumes that when Anna filed her dissolution petition in Jefferson Family Court, Oldham Family Court was the proper venue. However, by choosing the court in Jefferson County, she waived her right to object to venue there. *Seymour Charter Buslines, Inc. v. Hopper,* 111 S.W.3d 387, 390 (Ky.2003)(With rare exception, "plaintiff, by bringing the suit in a district other than that authorized by the statute, relinquished his right to object to the venue"; *quoting Olberding v. Illinois Centr. R. Co., Inc.,* 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953)). This gave Michael tactical alternatives. He

---

2. KRS 452.470 states that an action for maintenance or dissolution is to be brought in the county where the husband or wife usually resides.

could accept Anna's choice of Jefferson Family Court as the forum simply by declining to object. But he also had the option under the Civil Rules to object and assert the defense that Anna brought the action in the wrong venue. He sought to do neither.

Instead, Michael attempted in his response to "reserve" the right to raise improper venue as a defense at a later time. Two months later, Michael did file a motion to "to transfer venue." He claims "[t]his sequence of events should not have constituted waiver." We disagree.

"Improper venue" is a defense, CR 12.02(c), which a party must assert, either in a responsive pleading or by motion, "within 20 days after service of the summons upon him/her." CR 12.01. "A defense of ... improper venue ... is waived ... if it is neither made by motion under Rule 12 nor included in a responsive pleading or an amendment thereof permitted by Rule 15.01 to be made as a matter of course." CR 12.08(1). Our Supreme Court has so interpreted these rules in *Seymour Charter Buslines, supra,* stating,

> An objection as to venue must be made according to CR 12.02(c), which clearly labels a venue objection as a "defense." ... [S]uch "defenses" are waived if not made in a responsive pleading or by Rule 12 motion.

*Seymour Charter Buslines* at 390; *see also, Shepherd v. Mann,* 490 S.W.2d 760, 762 (Ky.1973)(in divorce action, objection to venue was "waived by petitioner's failure to raise it within proper time after valid service of the summons"; citing CR 12.01, 12.08(1)).[3] Michael neither asserted this defense in his response nor did he file a CR 12 motion. This constitutes a waiver

of his objection to venue. We reach this conclusion for two reasons.

First, a party cannot unilaterally enlarge the time within which the Civil Rules require action. To assert a defense of improper venue beyond the limit set by CR 12, he is required to file a motion pursuant to CR 6.02. *See, Motorists Mut. Ins. Co. v. Mercer,* 462 S.W.2d 188, 189 (Ky.1970)(relief from the operation of a Civil Rule "is available under CR 6.02 which provides for enlargement of the period of time for cause shown in proper situations"); *see also,* CR 15 (allowing amendment of pleadings under specific circumstances). This requires the trial court's participation and exercise of discretion. *Montfort v. Archer,* 477 S.W.2d 143, 144 (Ky.1970)("Enlargement under the rule is to be granted by the circuit court for cause shown, in the exercise of a judicial discretion."). If we accepted Michael's alternative, unilateral means of enlarging the time limits of Rule 12 through "reservation," we would be sanctioning an abrogation of our Civil Rules. *Id.* ("The rule [CR 6.02] prescribes procedures for obtaining such enlargements"); *see also, AK Steel Corp. v. Carico,* 122 S.W.3d 585, 587 (Ky.2003)("CR 73.02(1)(d) provides the *only* basis for enlarging the period for taking an appeal after the time for doing so expires"; emphasis provided).

Second, even absent CR 12, Michael sufficiently evidenced a waiver of his objection to the Jefferson Family Court as a proper forum by choosing to proceed in that venue and availing himself of that court's time and judicial resources. In addition to his response, he provided mandatory case disclosure, complied with local court rules that required his participation in family counseling, and began engaging in mediation ordered by the family court.

---

**3.** If the defense of improper venue is *timely* raised, the remedy is not dismissal of the action but transfer of the case to the proper venue. KRS 452.105.

He agreed to the entry of an order addressing several matters including: dismissal of the DVO against him entered by the Oldham District Court; medical treatment of the parties' child; the parties' joint attendance with the child at a special event at his treatment facility; facilitation of civil communication between the parties; use of the marital residence; and continued mediation of the parties' disputed issues.

We lack the authority to interpret Michael's "reservation" as permitting the assertion of the improper venue defense beyond the time allotted by the Civil Rules. Were we to do so, we would enable a form of forum shopping, allowing a party to subjectively assess how the litigation is progressing before seeking a different venue. The defense of improper venue, if allowed to be unilaterally "reserved" but not asserted until after the pleading phase, would become a mere guise for objection to the manner in which the forum is adjudicating the case.

Anna waived objection to improper venue by filing the petition and Michael waived objection to improper venue by failing to assert it in compliance with CR 12. At that point, Jefferson Family Court was no less a proper venue than Oldham Family Court, and KRS 452.470 could no longer serve as a basis to compel transfer of the case. *See, Fritsch v. Caudill,* 146 S.W.3d 926, 927 (Ky.2004)(holding that proper venue "may be conferred by waiver"). If it were otherwise, KRS 452.105[4] arguably would have required the Jefferson Family Court to transfer the case even if Michael had made the motion during the final hearing.

Jefferson Family Court clearly had subject matter jurisdiction and personal jurisdiction of the parties. Once the parties, by their waivers, bestowed proper venue status upon Jefferson Family Court, KRS 452.470 could no longer be the basis of a motion for change of venue. Instead, the legal basis of such a post-pleading motion was the doctrine of *forum non conveniens*. *See, Williams v. Williams,* 611 S.W.2d 807, 809 (Ky.App.1981)("Boyd Circuit Court did have jurisdiction [but] was a *forum non conveniens* [that] not only had a right, but also a duty to consider the doctrine and to decline jurisdiction, if appropriate."). *"Forum non conveniens* presupposes proper venue, but posits that another county where venue would be proper also is a more convenient forum, and calls for a discretionary ruling by a trial court to that effect." *Dollar General Stores, Ltd. v. Smith,* 237 S.W.3d 162, 166 (Ky.2007).

The doctrine of *forum non conveniens* is an exception to the general rule that "a court is duty bound to hear cases within its vested jurisdiction." *Roos v. Kentucky Education Association,* 580 S.W.2d 508, 509 (Ky.App.1979). It permits a court properly vested with jurisdiction and venue nevertheless to decline the exercise of its jurisdiction where an alternative forum exists and where the private interests of the parties or the public interests of the tribunal would be better served by proceeding in the alternative forum. *See, Beaven v. McAnulty,* 980 S.W.2d 284, 285 (Ky.1998)(superseded by statute on other grounds).

The parties' private interests include the relative availability of witnesses and other proof as well as all other matters that

---

4. KRS 452.105, captioned, Transfer of case on party's motion upon determination of improper venue, states: "In civil actions, when the judge of the court in which the case was filed determines that the court lacks venue to try the case due to an improper venue, the judge, upon motion of a party, shall transfer the case to the court with the proper venue."

"make trial of a case easy, expeditious and inexpensive." *Id.* at 286, *quoting Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Relevant public interest factors include administrative difficulties of courts with congested dockets and the desirability of holding a trial near those most affected by it.[5] *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. 1055. Unless the balance of these factors strongly favors the alternative forum, "the plaintiff's choice of forum should rarely be disturbed." *Id.* 330 U.S. at 508, 67 S.Ct. at 843. Whether to disturb that choice is a decision within the sound discretion of the trial court and that decision will be upheld on appeal absent an abuse of that discretion. *Williams v. Williams,* 611 S.W.2d 807 (Ky.App.1981).

Michael's motion, and his argument before this Court, is based solely upon the language of KRS 452.470 defining where "[a]n action for maintenance or dissolution must be *brought* [.]" (emphasis supplied). The Family Court correctly held that the motion was untimely, though without citing the proper basis for that reasoning, CR 12. However, the family court and this Court could have interpreted Michael's motion as arguing *forum non conveniens. See, Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979)(question of proper venue "is primarily a matter of choosing a *convenient* forum"; emphasis supplied); 77 Am.Jur.2d Venue § 4 ("The primary purpose of venue statutes [including KRS 452.470] is to provide a *convenient,* logical, and orderly forum for the resolution of disputes"; emphasis supplied). If so, denial was still appropriate.

We believe the family court, having expended judicial resources in the case when called upon to rule on the motion, properly weighed the private and public factors referred to *supra,* including the fact that prior to the filing of the petition the parties' usually resided in Prospect, Kentucky—a town that straddles the boundary between Jefferson and Oldham Counties. The trial court did not abuse its discretion in deciding not to disturb Anna's selection of a forum.

## DISTRIBUTION OF MARITAL ASSETS

■ Michael next claims the family court erred by failing to distribute the marital assets equally. He acknowledges that KRS 403.190(1) requires that the division be in "just proportions" and not necessarily equally. *Lawson v. Lawson,* 228 S.W.3d 18 (Ky.App.2007); *Gaskill v. Robbins,* 282 S.W.3d 306 (Ky.2009), *citing Herron v. Herron,* 573 S.W.2d 342 (Ky. 1978)("no presumption of a 50–50 division"). He also acknowledges that the family court's discretion is broad, but asserts that the evidence justifies an equal division of marital assets in this case. While another court may have divided marital assets equally, *Cochran v. Cochran,* 746 S.W.2d 568, 570 (Ky.App.1988), our review is limited to determining whether the division by the court below was an abuse of discretion. We believe it was not.

The parties initial division of marital assets had Anna with 70% and Michael with 30%, and Anna wanted to keep it that way. Michael argued for equal distribution. The record is clear that the family

---

**5.** In jury trials, these public interest factors would include the burden of jury duty on people of a community having no connection with the litigation. Where the alternative forum is a jurisdiction other than Kentucky, these factors would also include the appropriateness of proceeding in the court most familiar with the governing law. *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. 1055.

court followed the statute and considered "all relevant factors," including those listed in KRS 403.190(1)(a)-(d). The court then took measures to adjust the percentages of the marital assets awarded to each—Anna to receive 57%, and Michael to receive 43%. We have not been directed to anything that indicates to this Court that such a division, under the circumstances of this case, constitutes an abuse of the family court's discretion.

## AWARD OF MAINTENANCE

■ Michael also contends the trial court abused its discretion by awarding him maintenance of only $2,000 per month for six years. Michael argues the disparity of their incomes justifies an award of $6,000 per month for twelve years. We disagree.

Under KRS 403.200, the amount and duration of maintenance is a matter within the sound discretion of the trial court. *Gentry v. Gentry*, 798 S.W.2d 928 (Ky. 1990). As with other issues, when it comes to an award of maintenance, this Court is not authorized to "substitute its own judgment for that of the trial court on the weight of the evidence, where the trial court's decision is supported by substantial evidence." *Leveridge v. Leveridge*, 997 S.W.2d 1, 2 (Ky.1999), *quoting Combs v. Combs*, 787 S.W.2d 260, 262 (Ky.1990). Only when the trial court abuses its discretion or bases its decision on findings of fact that are clearly erroneous, may this Court disturb the lower court's decision. *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky.2003).

There is no dispute that Michael is entitled to maintenance. KRS 403.200(2) provides that once it is established that maintenance is appropriate, maintenance should be ordered "in such amounts and for such periods of time as the court deems just, and after considering all relevant factors,

including" those set forth in the statute. KRS 403.200(2)(a)-(f).

The family court found that Michael has reasonable monthly expenses, not including health insurance premiums, of $3,582 and a monthly income of $2,080, leaving an unmet need of $1,502. The family court found that Michael was not able to meet his reasonable needs independently with the marital property apportioned to him. It also concluded that while Michael is in good health, he is unlikely to be able to substantially increase his income in the near future. It properly considered the nature of Anna's financial resources, the standard of living established by the parties during the marriage, the duration of the marriage, and the ability of Michael to meet his own reasonable needs. We cannot say that the family court abused its discretion nor did it err as a matter of law as to the amount or duration of the maintenance award.

## HEALTH INSURANCE PREMIUMS

■ Similarly, we find the family court's decision to modify the period of time for which Anna was ordered to pay Michael's health insurance premiums was not an abuse of its discretion. In her motion to alter, amend or vacate, Anna asked that her obligation to pay Michael's health insurance premium be shortened from three years to eighteen months. This is the length of time Michael had a right to continue to be covered under the health insurance plan available to Anna through her employer under COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985). She also noted that while Michael's employment status at that time was only temporary, there was a possibility he would be hired as a permanent employee after he worked 320 hours. If he became permanently employed, health

insurance through his own employer would be an option.

Michael, in his response, did not deny Anna's claims. Instead he argued that the family court's original decision was within its sound discretion and should be upheld. Michael now argues that Anna did not submit proof of any additional expense she would incur in continuing to provide health insurance coverage for him and thus the family court had no basis for its modification. We find this argument to be without merit as Anna, even without specific figures, has demonstrated to this Court that continuing to provide for Michael's health insurance places a financial burden on her. The family court's decision to modify the terms of its original judgment was well within its discretion and we find no reason to reverse on this issue.

### INCOME TAX REFUND

 Michael's final argument pertains to the allocation of the parties' 2006 income tax refund. Anna received a 2006 income tax refund of $7,861. The family court found that Anna used the refund to pay for their child's tuition and medical care for his inpatient counseling and treatment in Idaho. As such, the family court allocated the refund for the parties' joint childcare obligation. However, in its December 4, 2007 judgment, the trial court also included the refund in the total value of marital assets to be distributed. Anna noted this in her motion to alter, amend or vacate and the family court, recognizing its mistake, made clear that the refund was not to be valued as a marital asset.

Michael now objects to the family court's decision, arguing that Anna never proved that the tax refund went to pay their

child's expenses. Again, we note that we review the factual findings of the family court only to determine if they are clearly erroneous. *Sexton, supra,* 125 S.W.3d 258. The family court heard extensive testimony concerning Alex's tuition and expenses for his treatment in Idaho. We believe there was substantial evidence to support the family court's finding that Anna's 2006 income tax refund was consumed for a legitimate joint parenting obligation. No error occurred.

### CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Family Court is affirmed.

ALL CONCUR.