RENDERED: JULY 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1054-MR

ROBERT STACY HALL                                                        APPELLANT

v.          APPEAL FROM JOHNSON CIRCUIT COURT
HONORABLE JANIE MCKENZIE-WELLS, JUDGE
ACTION NO. 19-CI-00121

HEATHER LEIGH HALL
N/K/A HEATHER LEIGH FANNIN                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND MAZE, JUDGES.

MAZE, JUDGE: Robert Stacy Hall (Hall) appeals from findings of fact,

conclusions of law, and judgment of the Johnson Family Court dissolving his

marriage to Heather Leigh Hall, now Fannin (Fannin). He argues that the family

court abused its discretion in its award of maintenance to Fannin and in its division

of certain marital property. Finding no such abuse of discretion in either instance, we affirm.

Hall and Fannin were married in 1992 and separated in 2019. The children born of the marriage had attained the age of majority by the time of separation. After filing of the petition, the family court granted Fannin temporary maintenance in the amount of $1,000.00 per month and temporary use of the marital residence located near Prestonsburg, Kentucky. While this matter was pending, Hall purchased a residence in Salyersville, Kentucky.

The family court issued a decree of dissolution of the marriage on March 11, 2021, reserving for later adjudication the contested issues regarding division of marital property and debt, and Fannin's claim for maintenance. On May 13, 2021, the family court issued findings of fact, conclusions of law, and a judgment on these matters. In pertinent part, the family court awarded the former marital residence to Fannin and the Salyersville residence to Hall. The court also ordered each party to assume the existing mortgage on the respective properties. After assigning the other personal property, the family court awarded Fannin one-half of the marital portion of Hall's retirement account, to be procured through a Qualified Domestic Relations Order (QDRO).

The family court also awarded maintenance to Fannin, essentially extending the temporary maintenance order of $1,000.00 per month for six months

until Fannin could obtain her equitable interest in the retirement account under the QDRO. Both parties filed motions to alter, amend, or vacate pursuant to CR[1] 59.05. Hall also requested additional findings on maintenance pursuant to CR 52.04. The family court modified several provisions and findings on matters relating to the division of property but denied both motions to alter its prior orders regarding maintenance. This appeal followed. Additional facts will be set forth below as necessary.

Hall first argues that the family court abused its discretion in awarding maintenance to Fannin. KRS[2] 403.200 provides that a court may grant maintenance to either party in a divorce action only if it finds that the party seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and . . . [i]s unable to support himself through appropriate employment[.]" KRS 403.200(1). Under this statute, the court must first make relevant findings of fact and then determine maintenance considering those facts. *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). "In order to reverse the trial court's decision, a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion." *Id.* Once the trial court finds that maintenance is appropriate, the

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Revised Statutes.

amount and duration of maintenance is left to the sound discretion of the trial

court. *Gentry v. Gentry*, 798 S.W.2d 928, 937 (Ky. 1990).

Hall first contends that the family court clearly erred in its initial

determination that Fannin was eligible to receive maintenance under the threshold

conditions in KRS 403.200(1). Since Fannin admitted that she was able to meet

her reasonable and necessary expenses without maintenance, Hall argues that she

cannot satisfy either of the conditions for maintenance. However, the family court

did not base maintenance only on Fannin's current income and expenses, but also

on the lifestyle established during the marriage.

In its August 20, 2021, order denying Hall's CR 59.05 motion, the

family court set forth additional findings regarding the maintenance award:

> The Petitioner [Fannin] was seeking a maintenance
> award in the amount of $1,500.00. While [Fannin]
> admitted that she was able to meet her reasonable and
> necessary needs without maintenance, she testified that
> she would have to modify her standard of living to which
> she had been accustomed during the marriage in order to
> do so. In determining maintenance, the Court
> specifically applied KRS 403.200(1) and determined
> under the Judgment, Paragraph 18, that [Fannin] met the
> requirements. The Court considered the financial
> resources of the parties as set forth in KRS 403.200(2),
> and her ability to meet her independent needs and the
> time necessary to acquire education and training, as well
> as the standard of living established during the marriage
> and the duration of the marriage. This marriage was
> quite lengthy, that being approximately thirty-six (36)

years [*sic*].[3]  Also, the Court took into account the amount to which [Fannin] would be receiving from the [Hall's] retirement account, that being $59,316.11, which is one-half of the equity in the retirement account.  The Court therefore only awarded maintenance for an additional six (6) months in the amount of $1,000.00 per month to allow [Fannin] time to obtain her equitable interest therein.  After such time, the Court found that she would have sufficient property to provide for her reasonable needs and to support herself in the lifestyle to which she had become accustomed.

In determining maintenance, KRS 403.200(1) and (2) both permit the court to consider the standard of living established during the marriage as a factor in assessing a spouse's "reasonable needs."  "The statute, as did the law before, . . . simply recognizes that what might be ample for a scullery maid is not necessarily sufficient for one accustomed to the lifestyle of a duchess, and it seems to us that the same is true with respect to what is 'support.'"  *Casper v. Casper*, 510 S.W.2d 253, 255 (Ky. 1974).  *See also Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003); and *Lovett v. Lovett*, 688 S.W.2d 329, 332 (Ky. 1985).  Consequently, the family court properly considered Fannin's reasonable needs in light of the standard of living established during the marriage.

---

[3] As Hall notes, the family court's recitation of a 36-year marriage is incorrect.  From the date of the marriage to the entry of the dissolution decree, the parties were married slightly more than 28 years.  However, we do not consider the miscalculation to be controlling to the outcome of this appeal.

The question in this appeal is whether Fannin established the amount of those needs with reasonable certainty. At a hearing on February 27, 2020, Fannin testified that she obtained her bachelor's degree in 2010 and still owed approximately $600 toward her student loans. In her current position, Fannin earns $17.00 per hour, with a gross monthly income of about $3000.00 per month. She testified that she had started in this position only three months earlier, with a significantly higher salary than her previous position.

Fannin listed specific expenses of about $2,640.00. She had listed additional expenses in her preliminary disclosure. On cross-examination, Fannin admitted that these other expenses were not strictly necessary. She further stated that she is able to meet her other needs without maintenance but it is "paycheck to paycheck" and that "it is not the way I lived before he left." Fannin added that she relied upon the temporary maintenance to meet her mortgage and car payments, and that she had cut back on many things while money was tight. The parties do not identify any evidence showing that Fannin's circumstances changed between the time of the hearing and the judgment.

The family court's findings did not identify which of Fannin's additional expenses were reasonably necessary in light of the standard of living established during the marriage. Nevertheless, we conclude that the family court's findings are supported by substantial evidence of record. Although Fannin

conceded that she could barely meet her minimal needs without maintenance, she emphasized that she could not afford to live near the lifestyle she enjoyed during the marriage. Her testimony and listing of expenses bear out this claim. Furthermore, Fannin is not required to liquidate assets in order to maintain the standard of living established during the marriage. *Perrine*, 833 S.W.2d at 827. Under the circumstances, we conclude that the family court did not clearly err in determining that Fannin was eligible to receive maintenance under the standards set forth in KRS 403.200(1).

Upon finding that a spouse is entitled to maintenance, KRS 403.200(2) directs the court to determine the amount and duration of such maintenance, "after considering all relevant factors" including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Hall argues that the family court failed to properly apply these factors in determining the amount and duration of the maintenance award. With respect to the (a), (b), and (e) factors, he again points to Fannin's income, expenses, and property allocated to her. Hall also notes that Fannin obtained a degree during the marriage, which enabled her to advance in her career. However, Fannin still earns considerably less than Hall and has a much shorter work-history as well. Under the circumstances, we cannot find that the family court failed to properly consider these factors.

Hall also focuses on factor (f), specifically taking the position that he is unable to meet his own reasonable needs while paying maintenance to Fannin. At the hearing, Hall testified that he is employed full-time earning $19.00 per hour. But he testified that his position is seasonal, with limited hours during the winter months. Hall reported gross yearly income in 2019 in the amount of $58,280.54, which works out to $4,856.72 per month. But in 2021, he reported gross monthly income of $4,560.00. Hall testified that his monthly expenses are $4,684.00. Both Hall and his girlfriend testified that she assists him with paying household expenses, and he would be unable to meet his needs without her assistance. Based on this evidence, Hall maintains that the family court clearly erred in finding that

-8-

he is able to meet his own reasonable needs while paying $1,000.00 per month in maintenance to Fannin.

We agree with Hall that this factor would weigh against an award of maintenance. However, the family court had the discretion to consider any and all factors it deemed relevant and to assign degrees of weight to each. In this case, the family court focused on Fannin's lesser income and earning capacity. Given their respective incomes, it seems likely that neither party will be able separately to maintain the same standard of living which they enjoyed during the marriage. Furthermore, both parties are struggling to meet their respective expenses.

But the family court noted that Fannin would be eligible to receive her share of Hall's retirement in six months. The court found that this resource would enable her to improve her standard of living to a level closer to what she enjoyed during the marriage. While a different court might have reached another conclusion, we cannot say that the family court in this case abused its discretion by awarding Fannin maintenance in the amount of $1,000.00 per month for the limited period of six months.

Hall also raises several issues with respect to the family court's division of marital property. KRS 403.190(1) directs the court to divide the marital assets in "just proportions," considering all relevant factors including: "(a) [c]ontribution of each spouse to acquisition of the marital property, including

contribution of a spouse as homemaker; (b) [v]alue of the property set apart to each spouse; (c) [d]uration of the marriage; and (d) [e]conomic circumstances of each spouse when the division of property is to become effective[.]" However, the statute does not specify how much weight should be given to each factor. Furthermore, a "just" division is not necessarily an equal division. *Stipp v. St. Charles*, 291 S.W.3d 720, 726 (Ky. App. 2009); and *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007). The family court has broad discretion to divide marital assets, and its determination of what constitutes a just division will not be disturbed absent an abuse of that discretion. *Hempel v. Hempel*, 380 S.W.3d 549, 553 (Ky. App. 2012).

Hall objects to the family court's allocation of the marital equity in the Salyersville residence. Hall concedes that all property acquired by either spouse subsequent to the marriage is marital property under KRS 403.190(3). So even though he acquired that residence after he separated from Fannin, he admits that the family court properly characterized it as marital. However, he argued that since Fannin made no contribution to the acquisition of that property, the family court abused its discretion by awarding any equity in that property to her.

In support of this argument, Hall relies on *Stallings v. Stallings*, 606 S.W.2d 163 (Ky. 1980). In that case, the Kentucky Supreme Court held that property acquired during separation but prior to entry of the decree was clearly

marital property under the KRS 403.190(2). *Stallings*, 606 S.W.2d at 164. The Court went on to suggest that such property need not be divided on the same basis as property acquired prior to separation. The Court noted the language in KRS 403.190(1) that a trial court may consider the "contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker." *Id.* But the Court went on to explain that "the 'contribution of a spouse as a homemaker' does not necessarily cease when the other spouse leaves[.]" *Id.*

As previously discussed, the family court had wide discretion in dividing marital property based upon a proper consideration of these factors, and we may not disturb its ruling on property division issues absent an abuse of that discretion. *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky. 1989). Although Fannin did not directly contribute to the acquisition of the Salyersville residence, Hall contributed his income at least to the mortgage payments. His income during this period would still be presumed marital. Hall claimed that his girlfriend contributed to the down payment for the residence, but he did not claim that this should be considered a non-marital contribution. Under the circumstances, we cannot find that the family court abused its discretion by including the equity in this property as part of its division of the marital property.

Accordingly, we affirm the judgment of the Johnson Family Court.

ALL CONCUR.


BRIEF FOR APPELLANT:  BRIEF FOR APPELLEE:

James Brandon May   Jennifer Burke Elliott
Paintsville, Kentucky   Prestonsburg, Kentucky