RENDERED:  OCTOBER 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1343-MR

LUCINDA MAY ROGERS                                        APPELLANT

v.
APPEAL FROM LOGAN CIRCUIT COURT
HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 20-CI-00011

THOMAS EARL ROGERS                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND JONES, JUDGES.

EASTON, JUDGE:  The Appellant, Lucinda May Rogers ("Lucinda"), appeals

from the Logan Circuit Court's division of property in a divorce action involving

herself and the Appellee, Thomas Earl Rogers ("Thomas").  On appeal, Lucinda

argues the circuit court erred in its determination of marital and non-marital

property.

First, Lucinda argues the circuit court erred in determining that two

properties used as post offices are Thomas' non-marital property.  Second, Lucinda

argues the circuit court erred in determining that an Edward Jones investment account was Thomas' non-marital property. Third, Lucinda argues the circuit court erred in determining that a Vanguard investment account was Thomas' non-marital property. Fourth, Lucinda argues the circuit court erred in determining Thomas had a non-marital interest in the marital residence. Finally, Lucinda argues the circuit court erroneously determined that Thomas had a marital interest in Lucinda's residence in Tullahoma, Tennessee. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Thomas and Lucinda married in 1990. In 1993, they purchased a house in Logan County. They separately obtained four adjacent empty lots. We will refer to this as the "marital residence." The purchase price of the marital residence was $180,500.00. The value of the marital residence is assessed at $208,500.00. There is a balance of approximately $20,000.00 on the marital residence's mortgage, resulting in equity in the amount of $188,500.00.

The parties separated in 2006 when Lucinda moved out of the marital residence and moved in with her mother. Lucinda took the personal property she desired when she left, and there is no disagreement between the parties as to the allocation of personal property. Lucinda eventually moved to Georgia, and now, currently lives with her mother in Tullahoma, Tennessee. Thomas lived in the

marital residence until November 2019, when he was severely injured in a motor vehicle accident. Since then, the marital residence has been vacant.

Thomas initiated divorce proceedings in January 2020. Prior to the filing of the divorce action, the parties had no contact with each other for years. They had no children together. The parties exchanged discovery, and in December 2021, the circuit court entered an Interlocutory Decree of Dissolution of Marriage over Lucinda's objection. On August 19, 2022, the circuit court held a trial to assign non-marital property and equitably divide marital property. Lucinda and Thomas were the only witnesses. Thomas introduced numerous documentary exhibits relating to the properties in question. We will next summarize the testimony.

Thomas testified he has ownership interests in two separate commercial buildings – one in Auburn, and the other in Smiths Grove. Thomas said he owns a one-half undivided interest in each of the commercial buildings, and that his half-brother owns the other one-half interest. Thomas explained he received the interests in these buildings in 1994 from his mother, Claradelle Rogers ("Claradelle"). The deed for the Auburn building, recorded in the Logan County Clerk's Office, shows that Claradelle conveyed the interest to Thomas for the consideration of "Love and Affection." Likewise, the deed for the Smiths Grove

-3-

building, recorded in the Warren County Clerk's Office, shows that Claradelle conveyed the interest to Thomas for the consideration of "Love and Affection."

Thomas has an investment account through Edward Jones (with a balance of $249,557.59). Thomas remembered that the funds for the account were derived from his inheritance from his father, Earl Gray Rogers, who died in 2008. Thomas introduced into evidence the Last Will and Testament of Earl Gray Rogers. This document bequeathed the remainder of his father's estate to Thomas after bequeathing specific items to Claradelle. The Edward Jones account is titled in Thomas' name solely, and he never co-mingled these funds with funds belonging to Lucinda.

Thomas also had an investment account through Vanguard (with a value of $597,540.59). Thomas said the funds for the account were derived from the prior sale of his one-half interest in a house located at 403 North College Street, Auburn, Kentucky to his half-brother as shown by a 1998 deed recorded in the Logan County Clerk's Office. The 1998 deed references that Thomas originally received this one-half interest as a gift from his mother Claradelle in 1994, like the post-office properties. The 1994 deed noting this gift to Thomas was recorded in the Logan County Clerk's Office. Thomas said the Vanguard account is titled in his name solely, and he never co-mingled these funds with funds belonging to Lucinda.

Prior to his marriage to Lucinda, Thomas owned a home in Simpson County, which he sold shortly after purchasing the marital residence. Thomas explained he invested the funds from the sale of the Simpson County home toward the improvement of the marital residence and paying down its mortgage. Evidence at trial showed Thomas invested $50,000.00 in the marital residence from the sale of the Simpson County home.

Lucinda owns a home in Tullahoma, Tennessee, where she resides with her mother. Lucinda explained that the Tullahoma home belongs to her mother, and she characterized the mortgage in her name as paying rent to her mother. However, the Tullahoma home is titled only in Lucinda's name.

Lucinda testified the funds to purchase the Tullahoma property came from the sale of property located at 165 Campground Road, Olmstead, Kentucky. The Olmstead property was purchased in 2003 for $130,000.00. Lucinda's mother contributed the entire amount. In 2008, Lucinda moved to Georgia. Lucinda obtained Quitclaim Deeds from her mother, her sister, and Thomas for their interests in the Olmstead property. The Olmstead property was sold for $149,000.00. Lucinda said the proceeds from the sale of the Olmstead property were then used to purchase a residence in Georgia, and later, her current residence in Tullahoma.

Evidence at trial showed the Tennessee Comptroller of the Treasury assessed the value of the Tullahoma property at $525,300.00. Evidence showed the Tullahoma property has a mortgage of $90,000.00 – solely in the name of Lucinda – resulting in equity in the amount of $435,300.00.

After the trial, the circuit court issued its Findings of Fact, Conclusions of Law, and Judgment. The court awarded Thomas the following non-marital property at issue: (1) his one-half undivided interest in the Auburn and Smiths Grove post offices, which the court determined was a gift from his mother; (2) the Edward Jones investment account; (3) the Vanguard investment account; (4) a non-marital interest in the marital residence in the amount of $52,216.01; and (5) a marital interest in Lucinda's Tullahoma home. This appeal followed.

**STANDARD OF REVIEW**

In a divorce action, the division of marital property is within the sound discretion of the circuit court and will not be disturbed unless the circuit court abuses its discretion. *McGregor v. McGregor*, 334 S.W.3d 113, 119 (Ky. App. 2011). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013).

Appellate review of a circuit court's factual findings is governed by the clearly erroneous standard, and factual determinations supported by substantial

-6-

evidence will not be disturbed. *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). In evaluating abuse of discretion, legal conclusions applied by the circuit court are reviewed *de novo*. *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020). In the context of deciding if property is non-marital, these standards of review are combined. "The question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006).

## ANALYSIS

In her appeal, Lucinda asserts the circuit court erred with respect to all for the following determinations: (1) determining that the two post office properties are Thomas' non-marital property; (2) determining that the Edward Jones account was Thomas' non-marital property; (3) determining that the Vanguard account was Thomas' non-marital property; (4) determining that Thomas had a non-marital interest in the marital residence; and (5) determining that Thomas had a marital interest in Lucinda's residence in Tennessee.

A circuit court's division of parties' property in a divorce action is governed by KRS[1] 403.190. This statute requires a three-step process: (1) the

---

[1] Kentucky Revised Statutes.

circuit court first characterizes each item of property as marital or non-marital; (2) the circuit court then assigns each party's non-marital property to that party; and (3) finally, the circuit court equitably divides the marital property between the parties. *Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001). Under KRS 403.190(3), "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property[.]"

Some property will often consist of both non-marital and marital components. *Travis*, 59 S.W.3d at 909. When this occurs, the circuit court must determine the parties' separate non-marital and marital shares or interests in the property from the evidence before the court. *Id.* Kentucky courts have typically applied the "source of funds" rule – which means that the character of the property, whether marital, non-marital, or both, is determined by the source of the funds used to acquire the property. *Smith*, 235 S.W.3d at 5. "Tracing" of non-marital contributions does not require a "smoking gun" document or mathematical certainty; rather, testimonial evidence and close in time circumstances of transfers may be considered. *See Chenault v. Chenault*, 799 S.W.2d 575 (Ky. 1990).

Lucinda's first argument is that the circuit court erred in its determination that the two post offices are Thomas' non-marital property. She specifically challenges the court's finding that these properties were gifts to Thomas alone rather than as gifts to them both. Lucinda argues the post offices are

-8-

marital property as they were acquired during the marriage, and they both had access to the income from these properties, which was reflected on joint tax returns. How the parties dealt with income relating to a property does not necessarily control whether the property is marital.

As previously stated, property acquired by either spouse during the marriage is presumed to be marital property. KRS 403.190(2) excludes from marital property items acquired as a gift. Courts consider the following factors in determining whether property is a gift: (1) the source of the money with which the property was purchased; (2) the intent of the donor at that time as to the intended use of the property; (3) status of the marriage relationship at the time of the transfer; and (4) whether there was any valid agreement that the transferred property was to be excluded from the marital property. *O'Neill v. O'Neill*, 600 S.W.2d 493, 495 (Ky. 1980). When a gift is received from a third party, courts will also look at whether the purported donor received compensation for the transfer. *Sexton v. Sexton*, 125 S.W.3d 258, 268 (Ky. 2004). The donor's intent is the primary factor in determining whether a transfer of property is a gift. *Id.*

Lucinda points out Thomas testified at trial that he "inherited" the interests in the post offices from his mother; however, the post office deeds were both dated 1994, and Thomas' mother did not pass away until 1997. Lucinda contends these conveyances were made during the parties' marriage and prior to

their separation in 2006. Lucinda argues there was no proof regarding the intent of the donor, and that the status of the marriage at the time of the transfer was good. Lucinda further argues there was no agreement that the post offices were to be excluded from being marital property.

As previously mentioned, the post office deeds conveyed the one-half interests from Claradelle to Thomas for the consideration of "Love and Affection." This was clearly a gift from Claradelle despite Thomas' understandable mischaracterization of it as part of his "inheritance." We must next determine whether this gift was meant to include Lucinda.

The third-party donor's intent is the main factor in determining whether a gift is made jointly to spouses or individually to one spouse. *Id.* at 269. The deeds are in Thomas' name only. Claradelle conveyed the other half-interests in the post offices to Thomas' brother, Carroll Browning, **and** his wife, Sue Ellen Browning, for and during their natural lives, with remainder to their daughter. The two wives were clearly and intentionally treated differently. Claradelle specifically mentioned Sue Ellen Browning in the deeds, but Lucinda was omitted. Lucinda did not provide contrary evidence as to Claradelle's intent. Thomas testified no marital funds were used to improve the post offices. Therefore, it is apparent the post offices were only meant to be gifts to Thomas, and the circuit court correctly determined the post offices are non-marital property.

-10-

Lucinda's next argument is that the circuit court erred in its determination that the Edward Jones account in the amount of $249,557.59 is Thomas' non-marital property. Thomas testified at trial that the funds for this account were derived from a 2008 inheritance from his father. Lucinda asserts Thomas could not produce any specific document showing that the Edwards Jones account was opened with any inheritance money.

The Last Will and Testament of Earl Gray Rogers bequeathed the remainder of the Estate to Thomas after bequeathing specific items to Claradelle. Thomas testified he placed $200,000.00 from his father's Estate into the Edward Jones account when the probate was closed, and that he kept these funds separate from his marital funds with Lucinda. The death of Thomas' father and the probate of his estate are close in time to the opening of the Edward Jones account. The circuit court noted no testimony was presented providing an alternate source of the funds in the account. Thomas testified he never placed Lucinda's name on the Edward Jones account. The circuit court correctly determined Thomas' Edward Jones account was funded solely from an inheritance, and thus, non-marital property.

Lucinda then argues the circuit court erred in its determination that the Vanguard account in the amount of $597,540.59 is Thomas' non-marital property. Thomas testified he initially placed $75,000.00 into the Vanguard account, and that

-11-

said funds were derived from the 1998 sale of his one-half interest in the house located at 403 North College Street, Auburn to his half-brother. Thomas testified the Vanguard account has grown to its current balance since then. Thomas testified he never placed Lucinda's name on the account, and he never co-mingled the account funds with funds belonging to Lucinda. There is no evidence to the contrary.

Lucinda counters that the deed from the 1998 sale of the College Street property clearly identified the grantors as Thomas and Lucinda Rogers. Lucinda argues Thomas produced no other documents at trial other than the 1998 deed that would substantiate a claim for the College Street property (and thus its proceeds) as being non-marital.

The 1998 deed references that Thomas originally received the one-half interest in the College Street property as a gift from Claradelle in 1994. Pursuant to the 1994 deed, Claradelle conveyed the interest to Thomas for the consideration of "Love and Affection." Lucinda was not mentioned. Just like the post office deeds, Claradelle conveyed the other half-interest in the College Street property to Thomas' brother, Carroll Browning, and his wife, Sue Ellen Browning, for and during their natural lives, with remainder to their daughter.

While Lucinda signed the 1998 deed for the College Street property as a grantor, she had no marital property to convey. Her signature was required to

transfer a contingent dower interest. KRS 392.020. A signature to eliminate dower during a marriage should not be confused with a recognition of a marital interest in an otherwise non-marital asset upon divorce. *Sexton*, 125 S.W.3d at 261 n1. The circuit court correctly determined that Lucinda was conveying her dower interest in the property. The circuit court correctly found the source of funds for the Vanguard account was a gift from Claradelle to Thomas, and thus the Vanguard account is Thomas' non-marital property.

Next, Lucinda argues the circuit court erred in its determination that Thomas had a non-marital interest in the marital residence in the amount of $52,216.01. Lucinda contends Thomas failed to prove that the $50,000.00 payment he contributed toward the purchase of the marital residence was a non-marital contribution. Yet Lucinda admitted that a portion of the proceeds from the sale of Thomas' premarital home in Simpson County was used to purchase the marital residence. Therefore, the $50,000.00 payment from Thomas was a non-marital contribution towards the marital residence.

The formula of allocating property consisting of both marital and non-marital contributions was established by *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. App. 1981). One must divide the non-marital contribution by the total contribution and then multiply by the equity. Using the *Brandenburg* formula, the circuit court correctly found that Thomas' contribution of $50,000.00

-13-

towards the $180,500.00 purchase price of the marital residence, in conjunction with equity in the amount of $188,500.00, entitled Thomas to a non-marital interest in the marital residence in the amount of $52,216.01.

Finally, Lucinda argues the circuit court erred when it determined that Thomas had a marital interest in Lucinda's residence in Tullahoma. Lucinda specifically argues all the funds used to purchase the Tullahoma property were non-marital proceeds from the sale of the non-marital Olmstead property. Further, Lucinda argues Thomas specifically quit-claimed his interest in the Olmstead property. Just like when Lucinda signed away her dower rights in the post office properties, when Thomas signed away his curtsy interest in the Olmstead property, Lucinda did not lose the non-marital portion of the contribution toward the property in Tullahoma.

Lucinda's mother contributed the original $130,000.00 to purchase the Olmstead property. Lucinda's later interest in these funds was a gift from her mother. When the Olmstead property was subsequently sold for $149,000.00, the resulting proceeds were used to purchase a residence in Georgia, and later, Lucinda's current residence in Tullahoma. We do not have evidence of the proceeds from the Georgia sale, but we can trace the Olmstead proceeds through that Georgia property. Lucinda testified that the Tullahoma home belongs to her

mother, but documents refute this contention. The Tullahoma home is titled only in Lucinda's name, and she is the one making mortgage payments on the home.

The Tullahoma home was purchased for $329,500.00, which is much higher than the non-marital contribution of $149,000 and shows funds during the marriage were also used. Lucinda produced no evidence that the rest of the purchase price was from non-marital sources. The current value of the Tullahoma property is $525,300.00, with a mortgage of $90,000.00. This results in equity in the amount of $435,300.00. The circuit court correctly determined Lucinda had a non-marital interest of $149,000.00 in the Tullahoma home, with the remainder of the home's equity being marital in nature. We note Lucinda did not argue about the amount of the marital portion calculation under *Brandenburg*. Her position was that none of it was marital. The Court correctly found the Tullahoma home marital portion was $283,300, all of which was allocated to Lucinda.

## CONCLUSION

The circuit court did not err in determining which properties were non-marital or had non-marital portions. While the division of marital property was not exactly equal, it was in just proportions. *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007). The circuit court explained the difference reflected individual interest in retirement accounts. There was no abuse of discretion in the property division. Therefore, the Logan Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Matthew J. Baker              Ami L. Brooks
Bowling Green, Kentucky       Russellville, Kentucky