RENDERED:  SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0654-MR

BRUCE HOLLIS                                                                APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 14-CI-503516

KELLY HOLLIS                                                                 APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND
REMANDING

** ** ** ** **

BEFORE:  JONES, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE:  Bruce Hollis appeals from those portions of the decree

dissolving his marriage to appellee Kelly Hollis which awarded her permanent

maintenance and denied his motion for reimbursement of child support paid

following the emancipation of the parties' younger child.  We affirm as to the

award of maintenance, reverse on the issue of child support, and remand for further proceedings in Jefferson Family Court.

Bruce and Kelly were married on October 24, 1990, in New Mexico and have separated several times over the course of their marriage. Although this dissolution proceeding was filed in 2014, the parties' final separation did not occur until February 2018. They have two adult children, Rachel, born in December 1997, and Sarah, born in December 1999. Bruce owns and operates Custom Overhead Door Service, Inc., a business he established just prior to the parties' marriage. Over the course of the marriage, Bruce worked and performed daily labor operations at the business and Kelly worked as the company's office manager and bookkeeper.

Both parties currently suffer from chronic health issues. Rheumatoid arthritis causes severe swelling and disfigurement in Bruce's joints and he underwent knee and foot surgery in recent years. He testified that a 2019 car accident had exacerbated his chronic pain. Kelly, on the other hand, suffers from cardiomyopathy and congestive heart failure, and she was adjudicated disabled in 2005 for which she receives Social Security Disability benefits. Kelly testified that she was able to continue working part-time until 2018 because the business operated out of the parties' home and she was able to keep a bed in her office where she could rest as needed.

Because the parties were able to reach a pre-trial agreement on numerous issues, only the issues of maintenance, overpayment of child support, and valuation of the business remained for decision by the family court. After hearing testimony from Bruce and Kelly, the family court ultimately awarded Kelly permanent maintenance in the amount of $1000 per month. Concerning the alleged overpayment of child support, the family court found that Bruce had failed to make a timely motion to modify his support obligation after the younger child's emancipation and had also failed to provide proof that he had actually paid support between the date of her emancipation and the filing of his motion for credit of the alleged overpayment. Bruce alleges in this appeal that the family court erred in its conclusions on both issues.

The well-established standard of review for determinations of maintenance and child support is abuse of discretion. *Stipp v. St. Charles*, 291 S.W.3d 720, 727 (Ky. App. 2009) (concerning maintenance awards) and *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001) (concerning child support). The familiar test for determining abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). As an appellate court, we are not free to substitute our own judgment for that of the trial court where that judgment is supported by substantial evidence. *Reichle v. Reichle*,

719 S.W.2d 442 (Ky. 1986). With these principles in mind, we turn to Bruce's arguments for reversal.

## 1. Maintenance

Citing the dictates of KRS[1] 403.200(1), Bruce contends that the family court erred in awarding Kelly permanent maintenance and in failing to credit him for the period of almost eight years in which he made maintenance payments prior to trial. Bruce correctly posits that the maintenance statute provides for an award only upon findings that the party seeking maintenance:

> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
>
> (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Bruce insists that the evidence before the trial court precludes a finding that either prong of the statute has been satisfied. With regard to subsection (a), Bruce points to the equitable division of the marital estate, focusing in particular upon his buyout of Kelly's share of the marital residence from which she received the sum of $146,500.00. Concerning subsection (b), Bruce argues that Kelly's marketable skill set and experience enable her to find well-paid work in a similar field. He

---

[1] Kentucky Revised Statute.

further argues that, given the fact that many bookkeeping and administrative positions lend themselves to a remote work environment, Kelly's health issues could be accommodated. Thus, Bruce maintains that Kelly is indisputably able to support herself.

As this Court noted in *Shafizadeh v. Shafizadeh*, KRS 403.200 requires family courts to engage in a two-step process prior to granting a party maintenance:

> First, the family court must determine whether the party seeking maintenance is entitled to it by ascertaining whether that party is able to meet his or her reasonable needs. KRS 403.200(1). Second, if the family court concludes maintenance is warranted, the family court must then establish the amount and duration of the maintenance award by considering several factors set forth in KRS 403.200(2). While, of course, mere lip service is insufficient, the family court is not required to render explicit findings of fact as to each relevant KRS 403.200(2) factor. *McGregor v. McGregor*, 334 S.W.3d 113, 118 (Ky. App. 2011).

444 S.W.3d 437, 446 (Ky. App. 2012).

Concerning the first of these factors, the family court specifically found that Kelly's health issues and adjudication of full disability render her incapable of engaging in substantial gainful employment and entitle her to an award of maintenance. As to the second prong of KRS 403.200, the family court noted that the statute allows it to consider several factors including the length of the marriage; the standard of living established during the marriage; and the

financial resources and ability of each party to meet his or her needs. In support of its conclusion that Kelly is entitled to permanent maintenance in amount of $1000 per month, the family court found that the parties had been married for nearly thirty years, although they had been separated intermittently over the past ten years. In addition, the court entered the following findings:

> [Bruce] owns and operates a successful business, which affords him consistent income of around $6,200 per month. [Bruce's] reasonable monthly living expenses are no more than $3,000. He has the ability to pay his expenses, with money to spare.
>
> [Kelly] has been adjudicated fully disabled, and as such, she is incapable of engaging in substantial gainful activity. In fact, she cannot engage in any activity for more than two hours at a time. [Kelly's] total income consists of Social Security benefits of $646.75 per month. Her monthly living expenses are $1,750, exclusive of clothing, personal care items, household goods, and vehicle maintenance. [Kelly] has a significant shortfall, but some of that will be mitigated by the division of the marital estate.
>
> The parties maintained a modest but comfortable lifestyle during their marriage. They owned a home, a small business, numerous older cars, a boat, and recreational vehicles. They took frequent vacations and owned two timeshares.

However, Bruce insists that the requirements of KRS 403.200(1) cannot be satisfied because Kelly was "made whole" by the equitable division of marital property which included his buyout of her share of the marital residence. In light of that division, coupled with Kelly's relatively young age and work

-6-

experience, Bruce argues that Kelly is indisputably able to provide for her reasonable needs.

As the former Court of Appeals reiterated in *Colley v. Colley*, a spouse is not required to deplete her share of the marital estate to qualify for an award of maintenance:

> The next necessary determination is, even though she is entitled to a divorce, does she have 'sufficient estate of her own'? Whether she has sufficient estate of her own depends upon what she owns and what she has been awarded as her part of the division of property acquired by the joint efforts of the parties. Her estate as thus determined is insufficient unless it will yield income or profits sufficient for her comfortable maintenance in a style suitable to the social standing established by the parties during marriage **without her being required to consume the principal**.

460 S.W.2d 821, 827 (Ky. 1970) (emphasis added). Because the family court's findings concerning the KRS 403.200 factors are supported by evidence in the record and adduced at the hearing, we find absolutely no basis upon which we might disturb its conclusion concerning Kelly's entitlement to permanent maintenance in the amount of $1000 per month.

## 2. Reimbursement for Payment of Temporary Child Support

Bruce's second allegation of error centers on his contention that he is entitled to a credit for "overpayments" he made pursuant to a temporary child support order. Not only does Bruce argue that his continued payments under the

order benefited Kelly alone, entitling him to a credit for post-emancipation payments, he also maintains a credit for overpayments is required by the plain language of KRS 403.213(3). That statute provides in pertinent part:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child shall be terminated by emancipation of the child unless the child is a high school student when he reaches the age of eighteen (18).

Citing *Price v. Price*, 912 S.W.2d 44 (Ky. 1995), the family court held that it had no power to relieve parents of their support obligation concerning payments which accrued *prior* to the filing of a motion to modify support. The family court also found that Bruce failed to provide proof that he had in fact paid child support pursuant to the temporary order between the date of the youngest child's emancipation and the filing of his motion.

Our review of the propriety of the family court's determination requires a detailed recitation of the procedurally complex facts regarding support orders and payments. As previously noted, the parties' path to the dissolution decree and the issues disputed in this appeal has been circuitous at best, involving DVOs, dissolution proceedings, and attempts at reconciliation. Although there appear to have been previous interactions with family court and the entry of domestic violence orders, the record on appeal commences with Bruce's November 2014 petition for dissolution of marriage. In his petition, Bruce

references another action, 99-D-501790-002, in which Kelly was awarded temporary custody of their two children. Appended to the record in this appeal is a copy of a no-contact DVO entered October 27, 2014, which bears the same action number and awards child support in the amount of $576 per month. That order states that it was effective until October 26, 2017.

On January 19, 2016, Bruce's former counsel filed a motion to reduce child support on the basis that the older child had turned 18 years of age and would graduate from high school in May 2016. It does not appear from review of the record that the motion was ever ruled upon. A limited decree of dissolution was entered on October 28, 2016, which restored the parties to the status of single persons and reserved the issues of child support and maintenance. Shortly thereafter, Bruce filed a motion to set aside the limited decree on the basis that the parties were attempting to reconcile. In December 2016, the family court entered an agreed order setting aside the limited decree.

Another agreed order was entered by the family court in January 2017, containing the following specific provisions pertinent to issues concerning support of the children:

1. Bruce will abide by all court orders;

2. make child support and maintenance payments in a timely manner;

3. continue to abide by the terms of the DVO which includes not entering the marital residence or having contact with the children without the entry of a court order concerning therapeutic counseling or reunification therapy;

4. maintain health insurance on children to age 25;

5. provide transportation expenses for Kelly and children to have exclusive use of the parties' timeshare one week per year; and

6. maintain yearly regional convention expenses for Kelly and the children.

A subsequent DVO entered October 17, 2017, extended the previous DVO to continue child support until April 17, 2018.

Pursuant to Kelly's motion, the family court entered an order in February 2018, adopting and incorporating the October 17, 2017 temporary child support order of the DVO into the dissolution proceeding. The next event related to child support was the entry on February 4, 2019, of the parties' mediated agreement which included the following pertinent provisions:

1. Bruce shall pay Kelly the sum of $7500 in three $2500 installments due on February 4, 2019, March 1, 2019, and April 1, 2019;

2. Bruce may argue that the $7500 paid herein is a credit for anything he can argue;

3. The $2500 monthly payment includes current orders for child support and/or maintenance;

-10-

5.  All other orders not inconsistent herewith shall remain in full force and effect; and

6.  The DVO remains in force and applies to the residence if Kelly moves back in.

On August 30, 2019, Bruce received a notice from the Cabinet for Health and Family Services that his $445 Kentucky tax refund had been transferred to the Department for Income Support/Child Support and applied to his child support arrearage of $7,614. He subsequently filed a September 10, 2019 motion to terminate child support on the basis that his older child is now 21 and had graduated high school and his younger child is now 19 and had graduated high school. The motion alleged that despite the emancipation of the children, the division of child support continues to show an active support obligation to be paid through the Office of the Jefferson County Attorney. Appended to that motion was a proposed order entitling Bruce to a credit for any overpayment. On September 16, 2019, the family court ordered that "[c]hild support is terminated effective 9/10/19, the date of plaintiff's motion. The issue of any arrearages is hereby reserved."

Which brings us back to the findings and conclusions concerning child support which are the focus of this appeal:

> The parties' younger child, Sarah, turned 18 years of age in December 2017 and graduated from high school in May 2018. Mr. Hollis did not file a motion to terminate child support until September 10, 2019. The

-11-

Court granted his motion, effective with the date of filing. Mr. Hollis would like to be reimbursed for his "overpayment," but it does not appear that he routinely paid child support after Sarah's emancipation. In fact, he testified that he did not know child support was ongoing until his tax return was intercepted.

. . . .

The emancipation of a child for whom a prior support order was issued triggers the review of the child support obligation. Seay v. Seay, 404 S.W.3d 215 (Ky. App. 2013); Dickens v. Dickens, 401 S.W.3d 489, 491 (Ky. App. 2013). However, the provisions of any child support order may be modified only as to installments accruing after the filing of a motion for modification. KRS § 403.212(1). Trial courts have no power to relieve parents of their child support obligation that become due prior to the filing of a motion for modification. Price v. Price, 912 S.W.2d 44 (Ky. 1995)[.]

In this case, Mr. Hollis not only failed to file a timely motion to modify his support obligation after Sarah's emancipation, but he also failed to provide proof that he had paid support between the date of her emancipation and the filing of his motion. Accordingly, his request for reimbursement is denied.

The family court again addressed the reimbursement of child support in a May 2020 order denying Bruce's motion to alter, amend, or vacate the April 8, 2020 judgment:

Lastly, [Bruce] argues that his child support obligation should be modified and then terminated as of the date of the children's respective emancipations. As detailed in the Judgment, the Petitioner took no steps to request a child support modification in a timely manner; there is nothing of record to show that he would have

-12-

been entitled to a reduction after the older child's emancipation; and there is no proof that he continued to pay support, aside from a single tax intercept, after the younger child's emancipation. The [c]ourt finds no merit in the Petitioner's argument. To the extent that he continued to overpay support after either child's emancipation, such overpayment was voluntary.

With this procedural history in mind, we analyze Bruce's contentions that his support obligation terminated as a matter of law upon the emancipation of the younger child and that he is therefore entitled to a credit for any support payments made after that date.

We reiterate that the unequivocal language of KRS 403.213(3) mandates termination of support upon the emancipation of a child unless the child remains a high school student when he reaches the age of eighteen. We thus agree with Bruce's contention his child support obligation terminated as a matter of law upon his younger child's graduation from high school in May 2018 and that the family court erred in refusing to terminate child support as of that date. The cases cited by the family court, *Price*, *Seay*, and *Dickens*, limiting authority to modify child support payments to prospective payments only, simply cannot be construed as applying to payments accruing after the date when a party's child support obligation has terminated as a matter of law and which he therefore has no legal obligation to make. Regardless of the date of a motion to terminate support, the statute itself provides the date upon which a party's support obligation ceases.

-13-

Thus, we hold that as a matter of law Bruce's support obligation terminated as of May 2018, the date his younger eighteen-year-old daughter graduated from high school. The family court's conclusion that it lacked authority to credit Bruce for payments made after that date is therefore erroneous as a matter of law.

However, our holding as to the proper application of KRS 403.213(3) does not necessarily entitle Bruce to a credit for all payments made after the date of Sarah's emancipation. As the family court correctly found, this record is essentially devoid of evidence concerning the amount of child support payments made, or the dates of those payments. Furthermore, if, as Kelly alleges, Bruce had a significant child support arrearage prior to the younger child's emancipation, any payments he made after Sarah's emancipation may be applicable to that arrearage. Ultimately, we view it to be the province of the family court, not an appellate court, to determine on the basis of the child support orders and agreements of record the actual extent of Bruce's child support obligation and the amount of any payments he made toward that obligation. The case is therefore remanded for the conduct of a hearing at which Bruce is to be afforded an opportunity to prove the extent of his support obligation and the amount of payments he made both prior to and after Sarah's emancipation.

Accordingly, we affirm the decision of the family court as to maintenance. Concerning child support, we reverse the family court's decision and remand for additional proceedings consistent with this Opinion.

ALL CONCUR.


BRIEF FOR APPELLANT:

John H. Helmers, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE:

Stephanie C. Willis
Louisville, Kentucky