RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1493-MR

MICHAEL TODD KEENE                                     APPELLANT

                 APPEAL FROM JEFFERSON FAMILY COURT
v.                 HONORABLE DERWIN L. WEBB, JUDGE
                 ACTION NO. 20-CI-502330

JENNIFER KEENE                                        APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: COMBS, DIXON, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This appeal arises from a dissolution action in which
Michael Todd Keene seeks review of the Jefferson Family Court's division of
marital property. We vacate and remand.

       Michael and Jennifer Keene were married on June 27, 1994, in
Jefferson County, Kentucky. The parties separated in February 2020, and Michael
filed a petition to dissolve the marriage on October 2, 2020. At that time, he was
46 years old and worked as a representative for United Auto Workers with Ford

Motor Company, and Jennifer was 43 years old and worked as a medical assistant with Norton Healthcare. Michael sought an equitable division of marital property and debts, and he indicated that he may claim non-marital property. Jennifer filed a response and a counter petition to dissolve the marriage, seeking an equitable division of marital property and debts, the restoration of her non-marital property, temporary and permanent maintenance, and payment of her costs including attorney fees.

In November 2020, Jennifer moved the court to enter a *status quo* order and for exclusive possession of the marital residence, where she had been living since the separation, so that she would have privacy and security. Jennifer also indicated that Michael had removed $6,000.00 from their checking account. The family court granted the motions later that month. In the *status quo* order, the court ordered Michael to pay for the parties' mortgage, health insurance, car insurance, and water bill. The court ordered Jennifer to pay her car payment, the gas and electric, cable, and internet bills, for the home security system, and for trash pick-up. Michael sought a case management date to discuss the issues and the return of $20,000.00 Jennifer had removed from their joint account.

The parties filed their respective pre-trial compliance, and Michael tendered proposed findings of fact and conclusions of law. Michael moved to strike Jennifer's untimely filed proposed findings, noting that she had failed to

-2-

comply with other pre-trial deadlines. In response, Jennifer blamed unreliable internet access for filing the proposed findings a day late.

The family court held a trial on July 16 and 21, 2021,[1] and on September 8, 2021, it entered an order in which it dissolved the marriage and ruled on the pending issues. The court assigned non-marital property, and it split the marital property (including the marital residence, vehicles, retirement accounts, three bonus/profit sharing payments, and personal property) and debts. It also addressed issues as to the withdrawal of funds from bank accounts, attorney fees, and the award of maintenance (the court awarded Jennifer $1,500.00 per month for three years).

Michael moved the court to make additional findings pursuant to Kentucky Rules of Civil Procedure (CR) 52, to alter, amend, or vacate the order pursuant to CR 59, and to reschedule the October 6, 2021, contempt hearing until 45 days after the final order. He also attached profit sharing information as ordered by the court, noting that there were only two payments, not three. Michael sought changes related to the value of the marital residence, the offset of the value of the vehicles from the value of the marital residence, offsets with his retirement plan, the amount of maintenance he was ordered to pay, and the attorney fee

---

[1] The certified record does not include a recording of the trial.

award. Jennifer also moved the court to alter, amend, or vacate the order pursuant to CR 59.05. This was related to the amount and duration of maintenance.

On November 10, 2021, the family court ruled on the pending post-judgment motions. It denied Michael's motion to strike Jennifer's proposed findings, noting that it had not signed either party's proposed findings; denied his motion to base the value of the marital residence on his father's testimony, even though he is a licensed real estate agent, as he was not a disinterested party; and declined to change its maintenance award. The court also declined to change the way it calculated the division of the marital property on an individual/line-item basis as "the overall distribution of assets is equitable. Changing a portion of the distribution would upset the overall balance contemplated by the Court." This appeal now follows.

On appeal, Michael seeks review of the family court's division of marital property. Jennifer contends that the court did not abuse its discretion in the division of the assets.

CR 52.01 provides the general framework for the family court as well as review in the Court of Appeals: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard

shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous."). The *Asente* Court defined substantial evidence as:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* (footnotes omitted). "The trial court's conclusions of law are reviewed *de novo*. . . . Decisions concerning the division of marital property are also within the sound discretion of the trial court, and will not be disturbed except for an abuse of that discretion." *Stipp v. St. Charles*, 291 S.W.3d 720, 723 (Ky. App. 2009) (citing *Gosney v. Glenn*, 163 S.W.3d 894, 98-99 (Ky. App. 2005), and *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky. 2001)). With these standards in mind, we shall address the issues Michael raises in his appeal.

For his first argument, Michael contends that the family court erred in dividing the parties' marital property due to a mathematical error with respect to the division of the values of the equity in the marital residence and the marital vehicles. Kentucky Revised Statutes (KRS) 403.190(1) provides that the court must "divide the marital property . . . in just proportions considering all relevant factors[,]" including each spouse's contribution to its acquisition, the value of non-marital property assigned to each spouse, the duration of the marriage, and the economic circumstances of each spouse when the division becomes effective. We review a family court's division of marital assets for abuse of discretion. *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010).

In its findings, the court determined that the marital residence had a value of $192,500.00, that there was $152,500.00 in equity, and that each party was entitled to half of the equity, or $76,250.00. The court awarded the 2019 Ford Explorer to Jennifer and the remaining three vehicles to Michael. These three vehicles had a value of $23,500.00, which the court ordered would offset his interest in the marital residence. The court did not find it necessary for either party to offset funds each had retained from a joint bank account ($20,000.00 that Jennifer withdrew) or a tax refund (Michael retained approximately $7,000.00). As to Michael's TESPHE[2] account, that account contained $149,378.98, and

---

[2] Tax-Efficient Savings Plan for Hourly Employees.

divided equally, each party would receive $74,689.00. "However, after dividing the vehicles, [Michael] is still owed $52,750.00 in equity in the marital residence. As such, he shall retain all but $21,939.00 of his TESPHE account. [Jennifer] shall be entitled to that amount as her share." In addition, Jennifer was awarded half of the marital portion of Michael's Ford pension.

On this issue, Michael argues that the total value of the vehicles he was retaining ($23,500.00) should be offset from the total value of the marital residence, rather than just half of it. The court determined that Michael was owed $52,750.00 in equity in the marital residence, calculated as follows: $76,250.00 (Michael's one-half interest in the marital residence) minus $23,500.00 (the total value of the vehicles Michael retained) equals $52,750.00. Michael asserts that the correct calculation the court should have used was to subtract the total value of the remaining vehicles (half was Michael's portion) from the total equity in the house ($152,500.00), meaning that he was owed $64,500.00 in equity for the marital residence, creating a difference of $11,750.00. This proposed calculation, Michael argues, would permit each party to be awarded one-half of these marital assets, which is what the family court intended based on the overall decree. The family court declined to change this calculation when it ruled on Michael's post-decree motion, stating that the overall distribution of the assets was equitable and that the balance would be upset if a portion of the distribution were to be changed.

We agree with Michael that the family court's calculation was not in keeping with its references to an equal division of the marital property. The court should have used either the total value of the equity and vehicles, or half of these values, to determine Michael's half of those two categories of marital property, and then calculate his portion with an offset of the value of the three vehicles he was retaining. The total amount of the equity in the marital residence and the vehicles is $176,000.00, meaning that the parties' portions should have been $88,000.00. Because Michael was retaining all of the vehicles, which had a value of $23,500.00, that amount would be offset from his portion. Therefore, he should have been apportioned $64,500.00, not $52,750.00. The court declined to revisit its calculation based upon Michael's post-decree motion, and we hold that this constitutes an abuse of discretion, especially in light of a lack of findings to support an unequal division, and the portions of the orders dividing the marital assets must be vacated.

Next, Michael contends that the family court failed to consider the tax consequences of its division of his TESPHE account. The court based the division of the account on its flawed calculation of the vehicles and equity in the marital residence, and it therefore must be vacated. However, we shall review this argument to offer any direction necessary on remand.

Michael cites to *Atkisson v. Atkisson*, 298 S.W.3d 858 (Ky. App. 2009), in support of his argument that the family court erred when it offset post-tax assets with his pre-tax retirement assets. While he was left with more of the TESPHE account, he stated that he would incur taxes in order to liquidate the account before he would be able to use this share of the marital estate or pay amounts to Jennifer or her attorney as ordered. This, he argues, would disrupt the intended equal division of marital property.

In *Atkisson*, this Court stated:

> In his second appeal, James contends that Kathleen filed the writs of garnishment and judgment lien before the compliance dates in the trial court's judgment had passed. As a result of this premature filing, James states that he incurred substantial penalties and interest as a result of the garnishment against his Allstate pension account. James maintains that these expenses should come out of Kathleen's share of the marital property since they were incurred as a result of her actions.
>
> . . . .
>
> But while Kathleen was within her rights to file the writs, we question the trial court's decision to allow Kathleen to garnish the tax-deferred accounts. Because the trial court allowed the garnishment against these accounts, James states that he incurred 10% penalties for early withdrawal, plus additional taxes and fees. James contends that these penalties should be assessed against Kathleen's share of the marital estate.
>
> In the absence of a statutory exemption, tax-deferred accounts are subject to garnishment and judgment liens like any other account. However, the trial

court should consider the tax consequences of its division of marital property. *See Broida v. Broida*, 388 S.W.2d 617, 621 (Ky. 1965); and *Owens v. Owens*, 672 S.W.2d 67, 69 (Ky. App. 1984). Otherwise, the payor spouse's share of the marital estate might be consumed by the taxes incurred to liquidate sufficient assets for the payee spouse's share.

In this case, the trial court recognized that James would incur substantial penalties and taxes by allowing the garnishments; but the court concluded that James could have avoided these consequences by paying the judgments within the time frames provided in the judgments. Under the specific circumstances of this case, we disagree.

The trial court faulted James for his failure to submit a [Qualified Domestic Relations Order] QDRO by the February 25 deadline set out in the amended judgment. Although James failed to meet this deadline, it is clear from the record that James and his counsel made a good faith effort to do so. James submitted a QDRO to Kathleen's counsel, who responded that a QDRO would not be necessary.

We agree with the trial court that James's submission of the QDRO to the [sic] Kathleen's counsel did not comply with the mandate set out in the judgment. However, the trial court made no effort to determine whether James had other accounts which could be garnished without incurring such drastic tax consequences. Furthermore, the trial court could have imposed additional attorney fees and costs for the delay. Additionally, of course, the amounts bear interest at the post-judgment rate from December 20, 2007.

By upholding the garnishment writs against the tax-deferred accounts, the trial court subjected James to a penalty which was far in excess of his breach. The garnishment writ converts a deferred distribution of

-10-

marital assets into a present-value distribution. The penalties and taxes imposed on James fundamentally alter the underlying allocation of marital assets. Consequently, we find that the trial court's decision to uphold the writs amounted to an abuse of its discretion.

Since the trial court upheld the garnishment writs, James has presumably already incurred the penalties and taxes as a result of the early withdrawals. We agree with James that these additional expenses should be assessed, at least in part, against Kathleen's portion of the marital estate. However, we also agree with the trial court that James bears some, if not substantial, responsibility for these penalties since he did not fully comply with the trial court's orders. Therefore, we will remand this matter to the trial court for a determination of the amount of penalties and taxes incurred as a result of the garnishment and an appropriate allocation of this amount between the parties.

*Atkisson*, 298 S.W.3d at 865, 867-68.

Jennifer argues that *Atkisson* has no application to this case, and we agree. In that case, there were actual taxes, penalties, and interest that the husband had to pay due to the garnishment. Here, the court's award did not require Michael to liquidate any of his assets and, therefore, he had not incurred any tax consequences. The court ordered the account to be divided pursuant to a QDRO in order to prevent the imposition of taxes, penalties, or interest.

However, on remand, while the family court is not required to consider the tax consequences of offsetting post-tax assets from pre-tax assets, it

may do so if it decides that would be an appropriate consideration when it redivides the marital property.

Finally, Michael argues that the family court erred in including profit sharing bonuses in the marital estate that no longer existed at the time of the trial. He bases this argument on two reasons. First, he argues this part of the award arose from Jennifer's untimely filed proposed findings that the court improperly permitted her to submit, which argument we reject. And second, that he had used these funds to pay for marital expenses and should not have to owe Jennifer any of the amount when the court declined to make Jennifer do the same thing with respect to the $20,000.00 she withdrew. Jennifer, on the other hand, states that during the trial, Michael admitted that he had received two profit sharing bonuses during the marriage, but after they had separated. He claimed at trial that he had used these funds for bills, but the family court found that he had been living with his parents, incurring virtually no expenses. Jennifer also argues that Michael failed to preserve this argument for our review, which we also reject.

As to the merits of the argument, we disagree with Jennifer's assertion that the family court's reference to Michael having virtually no expenses is in relation to what he spent the bonus money on. Rather, that reference by the family court is in the section of the order ruling on permanent maintenance. And we recognize that pursuant to the *status quo* order, Michael was required to pay the

parties' mortgage, health and car insurance, and water bill.  Because we are vacating the division of the marital assets, the court may revisit the division of the profit sharing bonuses on remand if it so chooses.

For the foregoing reasons, the orders of the Jefferson Family Court related to the division of marital property are vacated, and this case is remanded for further proceedings in accordance with this Opinion.

COMBS, JUDGE, CONCURS.

DIXON, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Justin R. Key | Mary Rives Chauvin |
| Jeffersonville, Indiana | Louisville, Kentucky |